**KNIGHTS OF COLUMBUS, a corporation, Plaintiff,**

v.

**Arthur M. WIRTZ, Virginia W. Wirtz, William W. Wirtz and Arthur M. Wirtz, Jr., Defendants.**

**No. 76–350C(B).**

United States District Court, E. D. Missouri, E. D.

July 20, 1978.

---

J. L. Pierson, Lewis, Rice, Tucker, Allen O. Chubb, St. Louis, Mo., for plaintiff.

Guilfoil, Symington & Petzall, Thomas J. Guilfoil, St. Louis, Mo., for defendants.

## MEMORANDUM

REGAN, District Judge.

In this diversity action tried to the Court, plaintiff seeks to recover a portion of a deficiency remaining due after a foreclosure sale. Defendants have counterclaimed for moneys allegedly owing to them.

On December 15, 1964, plaintiff conveyed to Frontenac Realty Corporation certain real estate in the City of St. Louis known as the Frontenac Apartments in exchange for a promissory note of the corporation in the principal sum of $3,375,000, secured by a deed of trust on said property. Both in-

struments were executed on behalf of the corporation by William W. Wirtz. The deed of trust was duly recorded on January 4, 1965. On December 31, 1964, the corporation (which had been organized by defendants Arthur M. and his son William W. Wirtz) conveyed the property by warranty deed to defendants, and they duly recorded the deed on January 19, 1965. By reason of a default under the terms of the deed of trust, the property was sold at foreclosure on March 27, 1975 for $2,000,000, plaintiff being the purchaser.

The deed of trust and the note obligated Frontenac Realty Corporation to pay, in addition to the principal amount, "fixed" interest at the rate of 3½% per annum and "additional" interest of 4½% per annum, non-cumulative, "to the extent of available net income," as that term is defined in the deed of trust. Paragraph 7 of the deed of trust specifically provides that "Realty Corporation" (Frontenac Realty Corporation) as used anywhere in the instrument shall include and be interpreted to mean not only Frontenac Realty Corporation but any grantee of Frontenac Realty Corporation who shall become the owner of the property, and that the covenants and agreements of Frontenac Realty Corporation shall become and be the covenants and agreements of such grantee by the acceptance of a deed from Frontenac Realty Company conveying the property to such grantee. By a further provision in Paragraph 7, it was agreed that Frontenac Realty Corporation may convey the property subject to the lien of the deed of trust without its grantee assuming any liability for payment of *principal or interest* of the secured note "*except from income* of said property or proceeds of its sale."

The warranty deed conveying the property to defendants provides, in part, that said grantees "shall not assume any liability for payment of *principal or interest* of the notes secured by the said deed of trust, *except from income* of said property or proceeds from the sale thereof by said (grantees)."

We find from the evidence that for the period from January 1, 1974 through February 27, 1975 (when possession was relinquished by defendants) the income derived by defendants from the property was $239,211.96, none of which was paid to plaintiff.

■ Under the premise that under no view of the facts could defendants be liable for anything other than interest, either fixed or additional, defendants argue that such liability has been extinguished. They point to a provision in the deed of trust to the effect that the proceeds of a foreclosure sale shall be applied to the unpaid accrued interest prior to the unpaid principal, so that (on defendants' theory) had the trustee paid the unpaid accrued interest out of the $2,000,000 proceeds of the sale, as was its duty, the interest would have been fully paid, thereby relieving defendants of any liability based on their receipt of income.

We do not agree. Paragraph 4 of the deed of trust contains an express covenant and agreement by "Realty Corporation" that it will duly and punctually pay the *principal* of *and* the fixed and additional interest on the note secured thereby according to the terms thereof and of the deed of trust. By Paragraph 7, this covenant and agreement for payment of principal and interest became and was the covenant and agreement of defendants as grantees by their acceptance of the warranty deed from Frontenac Realty Corporation, except that the liability of such grantees would be limited to the amount of income derived from the property.

The language employed authorized Frontenac Realty Corporation to convey the property only to a grantee who assumed liability not merely for interest, but for principal as well, to the extent of the income available for that purpose. Recognizing this obligation, the warranty deed clearly obligates defendants for the payment of both principal and interest, not to exceed, however, the amount of income. It is obvious that the purpose of the deed of trust provision was to absolve defendants (if, as contemplated, they were to become the grantees of Frontenac Realty Corporation) of any *personal* liability for payment of principal or interest *additional* to the amount of income of the property.

Hence, without regard to whether the proceeds of the foreclosure sale should have first been applied to payment of the accrued unpaid interest, both fixed and additional, defendants, as grantees of Frontenac Realty Corporation, remain liable for any deficiency of either principal or interest but not to exceed the income derived from the property which they did not theretofore pay over to plaintiff in accordance with the terms of the deed of trust.

■ We find no merit to the further contention of defendants, belatedly raised in their post-trial brief, that inasmuch as plaintiff was not a party to the warranty deed from Frontenac Realty Corporation, plaintiff was required, as a condition to holding them liable, to introduce parol evidence to prove defendants' intent to assume the limited liability for payment of principal and interest. Clearly, defendants had notice of the terms of the note and deed of trust and their acceptance of the warranty deed suffices to create an obligation on their part to pay principal and interest out of the income of the property. And nothing in the evidence is supportive of any contention that defendants did not in fact assume that limited liability for payment of principal and interest. Plaintiff is entitled to judgment on its claim in the amount of $239211.96.

■ The counterclaim alleges that on or about September 10, 1964, certain "understandings" and oral agreements were had between defendant Arthur M. Wirtz and officers of plaintiff whereby it was agreed that said defendant would take over the management of the property and take title thereto prior to the end of the year of 1964 as nominee for plaintiff; that defendants would take no income from the property but would be entitled to all proper tax deductions flowing from said nominal ownership; and that all net income paid to plaintiff (no matter how denominated in the final documents) would be used by plaintiff to reduce the principal amount of the mortgage, which plaintiff failed and refused to do; that at said time plaintiff agreed to advance the sum of $350,000 to make necessary repairs and improvements to the building, but that by reason of the efforts of defendants, the rentals were increased to the extent that the improvements could be paid out of current receipts; that much of the success of the rental program was due to radio advertising on a local station owned by defendants for which no charge was ever made to plaintiff; and that by foregoing their right to finance the improvements by an addition to the principal amount of the mortgage, defendants denied themselves substantial deductions for additional depreciation and interest on the additional principal amount; that it was always "understood" that defendants would not be financially harmed or disadvantaged as a result of their activities designed to aid the plaintiff; that due to a 1969 change in the Internal Revenue law, defendants were unable to receive the full benefit of the foregoing arrangement with plaintiff unless the arrangement was extended for an additional seven years, but that in complete disregard of the long-standing agreements and the benefits reaped by plaintiff through the efforts and good will of defendants, plaintiff refused to extend the arrangement beyond the original ten year period, but instead sold the property at foreclosure, thereby "causing defendants to lose many of the substantial tax advantages which had been their only reward for coming to the aid of Plaintiff in a time of need"; and that the various lost tax deductions and the unreimbursed radio advertising time amount to a sum in excess of $350,000, but defendants desire only the amount which was originally to have been advanced to them as part of their long-standing agreement with plaintiff to manage its investment in the property. Judgment was sought for $350,000, interest, costs and attorneys fees.

As we read the counterclaim the major complaints therein are twofold: First, that after defendants acquired "nominal" ownership of the property, plaintiff breached an oral "understanding" and agreement which had been arrived at in September, 1964, between Arthur M. Wirtz and plaintiff to

the effect that all the net income of the property would be used by plaintiff in reduction of the principal of the mortgage (apparently without regard to what the mortgage set forth as to the application thereof), and Second, that as a result of the acquiescence of defendants in plaintiff's failure to lend them an additional $350,000 (secured by the same mortgage) for use by defendants in repairing and improving the mortgaged building and their use in lieu thereof of current income from rental receipts for said purpose, defendants lost certain tax deductions for depreciation and interest for which, together with cost of advertising the rental units on a radio station owned by defendants, they were not reimbursed.

In defendants' post-trial brief, the further contention is made with respect to the alleged September, 1964, oral "understanding" that it included an agreement that at the end of the 10-year term of the deed of trust note (during which all of the net income of the property was to be used to reduce the principal amount of plaintiff's investment therein) defendants would be given an opportunity to "purchase" the property at its then "real" market value on terms to be then agreed upon. Wholly apart from the obstacle of the Statute of Frauds, there is no evidence at all to support this contention other than one very vague, ambiguous and unexplained reference to a sale of the property to defendants after ten years. Parenthetically, we observe that we do not see how it is possible in any event for defendants to legitimately be allowed *any* income tax deductions either for depreciation or interest unless their ownership of the property was bona fide and not merely "nominal" on behalf of plaintiff.

The burden of proof as to the counterclaim with respect to *any* possible claim which could conceivably come within the allegations thereof was upon defendants. In our judgment, under the evidence ad-

duced at the trial, they have wholly failed to sustain that burden. The sole witness to testify on behalf of defendants was the defendant Arthur M. Wirtz.[1] The testimony of Mr. Wirtz is vague, rambling, and disconnected. For the most part that testimony pertained to conversations had in September, 1964 and in early 1965 with Francis Heazel, then an officer of plaintiff, who is now dead. Mr. Heazel, a longtime friend and business associate of Arthur M. Wirtz, was also a director in some of Wirtz' corporations and involved with him in unrelated ventures. The early 1965 conversation allegedly occurred at a director's meeting of a Wirtz corporation shortly before Mr. Heazel left office with the Knights of Columbus.

It is at once apparent that the September 10, 1964, conversation (in which John W. McDevitt, the chief executive officer of plaintiff, also participated) was nothing more than a preliminary conversation leading up to the final contract entered into in writing several months later. Significantly, there was no evidence at all with respect to the status and progress of the negotiations of the parties in the period between September and late December 1964 when the written documents were executed.

Defendant Arthur M. Wirtz was admittedly advised by counsel as to the legal consequences of what was agreed upon. And as a sophisticated businessman, Mr. Wirtz surely should have known that to the extent plaintiff was to be ultimately bound by prior discussions with some of its representatives, the final *written* contract would be the determinative factor.

Insofar as concerns the alleged agreement to use *all* of the net income toward the reduction of the principal of the deed of trust note, such agreement is, of course, inconsistent with the later written agreement executed by Frontenac Realty Company (and assumed by defendants) to pay

1. We have not overlooked the fact that the parties stipulated that William W. Wirtz, a son of Arthur M. Wirtz, would, if called to the stand, testify to the same effect as his father

with respect to that portion of the latter's testimony concerning the September 10, 1964 discussions.

plaintiff additional *interest of 4½%* per annum (non-cumulative) out of available net income determined pursuant to the provisions of the deed of trust. This agreement in the note and deed of trust would make no sense whatever if the agreement of the parties was that *all* the net income was to be paid over to plaintiff in reduction of the note.[2]

And absent evidence to the contrary, we may assume that defendants (who were admittedly in the top income tax bracket) actually obtained the benefit of their payments on account of both the fixed and the additional interest as interest deductions on their tax liability, so that they could not have been disadvantaged if these payments were not applied on the principal. So, too, there is no evidence whatever to support the allegation that the defendants lost *any* tax deductions for depreciation during the time they owned the property or, if so, the amount thereof. And as we have noted, defendants could not have validly been entitled to *any* income tax deduction for depreciation unless they were in fact the actual owners of the property.

Insofar as the advertising on defendants' radio station is concerned not only is there no evidence supportive of any liability of *plaintiff* therefor, but there is no evidence at all as to the cost of such advertising or the time it was incurred. And wholly aside from the fact that defendants, as owners of the property, would be vitally interested in increasing the number of tenants by means of the advertising, it is also obvious that by reason of their entitlement to deduct from the net income a management fee of 3% of gross receipts derived from the property, it was to their interest to increase such receipts and thus the amount of the fee.

As for the $350,000 which plaintiff did not advance for repairs and improvements,

the deed of trust contains provision which would indicate an understanding on the part of plaintiff that *when called upon from time to time* it would loan to Frontenac Realty Company for such purpose an amount not to exceed the sum of $350,000 in the aggregate, such loan to be secured by the same deed of trust and be subject to all of its terms. There is no credible evidence, however, that plaintiff was ever actually called upon to lend this money. Arthur M. Wirtz testified that in a conversation with Mr. Heazel at a Wirtz corporation directors' meeting, the subject was broached, and that in the course of that discussion, it was agreed by Heazel that such amount could be advanced by Wirtz for the necessary work of repair and improvement of the property, with the understanding that the Wirtzes would be reimbursed therefor at a later date. It would appear from the vague testimony that this "later" date would be at the end of the 10-year period when the property which defendants already owned was allegedly to be sold to them.

If we were to credit this testimony, which we do not, one difficulty is that (according to the answer and counterclaim) the money in question was "advanced" by defendants *out of the then current income of the property* which would otherwise have been payable to plaintiff either as additional interest or on account of the principal.[3] And assuming there was such an agreement and that it could overcome the hurdle of the Statute of Frauds and the Statute of Limitations, we find no basis in the evidence for a finding that defendants were disadvantaged by their use of the current income of the property to repair and renovate the property.

Having failed to sustain their burden of proof, defendants are not entitled to recover on their counterclaim.

---

**2.** The clear implication from the evidence is that the net income of the property was not sufficient to pay the entire 4½% additional interest. However, there is no showing that the parties actually contemplated that this situation would continue indefinitely.

**3.** In his September 10, 1964 letter to John W. McDevitt, plaintiff's chief executive officer, Arthur M. Wirtz recounted that there was a possibility that funds for repairs and improvements might be required, stating that "*any amounts required for this purpose, in addition to the income from the property,* are to be advanced by the Knights of Columbus. . . . ."

The foregoing MEMORANDUM constitutes our findings of fact and conclusions of law. Judgment will be entered in favor of plaintiff and against defendants in the sum of $239,211.96 together with interest thereon from April 21, 1976, the date this suit was filed and costs.